IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DAVID SOUTH**
**d/b/a THE TOMAHAWK BAR,**

        **Plaintiff,**

vs.                                                        No. CIV 00-559 JP/RLP

**THE NAVAJO NATION, THE HONORABLE**
**LORETTA MORRIS, District Judge of The**
**Navajo Nation, Judicial District of Crownpoint,**
**New Mexico, GUY BENALLY, as parent and guardians**
**of GERALD BENALLY, a minor, ELLA MAE PERRY,**
**as parent and guardian of DUSTIN PERRY, a minor,**
**RONALD and CHARLOTTE SAUNDERS, as parents and**
**guardians of RUSSELL SAUNDERS, a minor, and**
**FARROLL DELGARITO,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On July 10, 2000 Defendants The Navajo Nation and the Honorable Loretta Morris filed a Motion to Dismiss the Plaintiff's complaint filed in this federal court action for failure to exhaust tribal court remedies, (Doc. No. 15).  After thoroughly considering the briefs, the facts, and the law, I conclude that this Court has federal question jurisdiction over this action but that comity concerns require Plaintiff to exhaust his remedies in the courts of the Navajo Nation.

## I. BACKGROUND

According to the Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief, the facts are as follows.[1]

### A. Navajo Nation Action

On May 14, 1999, Guy Benally, as parent and guardian of Gerald Benally, a minor; Ella Mae Perry, as parent and guardian of Dustin Perry, a minor; Ronald and Charlotte Saunders, as parent and guardian of Russell Saunders; and Farroll Delgarito filed an action in the Navajo Nation District Court against Dairyland Insurance Company, Brian Joe, Robert R. Joe, Lillian Hicks, David A. South, and the Tomahawk Bar. They sought to recover damages arising from a December 22, 1997 accident involving one car, which Brian Joe was driving.

The complaint filed in the Navajo Nation District Court alleges the following facts. On December 21, 1997 employees of the Tomahawk Bar supplied approximately twelve quarts of beer or malt liquor to Brian Joe. At the time of the sale, Brian Joe was seventeen years old and could not legally purchase or consume alcohol. The employees of the Tomahawk Bar should have known that Brian Joe and the passengers in his car were minors and therefore could not legally purchase alcohol. After purchasing the alcohol, Brian Joe consumed it on tribal lands. At approximately 2:00 a.m. on December 22, 1997, Brian Joe, who was allegedly intoxicated, crashed the car in which Gerald Benally, Russell Saunders, Dustin Perry, and Farrell Delgarito were passengers. Everyone in the car suffered injuries. Robert Joe and Lillian Hicks were co-owners of the car.

The complaint in the Navajo Nation action also makes the following allegations. The

---

[1] Plaintiff attached to his complaint as Exhibit A a copy of the complaint filed against him in the Navajo Nation District Court for the Judicial District of Crownpoint, New Mexico.

Tomahawk Bar is located in Prewitt, New Mexico and is owned by David South. (Am. Compl. at ¶ 11-12.) "All material events herein, including the collision that gives rise to this litigation, happened in Indian country, on or near the lands of the Navajo Nation." *Id*. at ¶ 13. The accident occurred on BIA Route 48. *Id*. at ¶ 15. At all times, the laws of the Navajo Nation prohibiting the consumption of alcohol on the Navajo Nation and driving while intoxicated were in effect. *Id*. at ¶ 18. All of the plaintiffs in the Navajo Nation action and Brian Joe, Lillian Hicks, and Robert Joe are members of the Navajo Nation.

David A. South d/b/a/ the Tomahawk Bar filed in the Navajo Nation District Court a motion to dismiss the complaint on the ground that the court lacked jurisdiction over him. The court entered a six-page Opinion and Order, (Ex. A to Defs.' Memo. in support of Mo. to Dismiss), denying the motion to dismiss and citing the Navajo Nation's civil jurisdiction statute, Nation Code tit. 7 § 253 (1995), and the Navajo Nation's Dram Shop Act, Nation Code tit. 7 § 207 (1995). Section 253(B) states that the Navajo Nation District Court has jurisdiction over all civil actions in which a defendant "has caused an action to occur within the territorial jurisdiction of the Navajo Nation." Section 207(A) provides that:

> Any person who has been injured or damaged by an intoxicated person, or as a consequence of the intoxication of any person, may maintain an action in the Courts of the Navajo Nation against any person, individual, partnership, association or corporation selling or furnishing liquor or intoxicating beverages for consumption within the Navajo Indian Country if such liquor or intoxicating beverage was a cause of the intoxication.

After David A. South filed a motion to reconsider, which was apparently never ruled on by the district court, he appealed to the Navajo Supreme Court. The Supreme Court dismissed Mr. South's appeal on the ground that it was an interlocutory appeal and was not taken from a final appealable order. (Order, Ex. A to Defs.' Mo. to Dismiss.)

### B. Federal Court Action

On April 19, 2000, David A. South d/b/a Tomahawk Bar, as Plaintiff, filed this action in federal district court alleging that the Courts of the Navajo Nation lack jurisdiction over him. Mr. South requests that this Court enter a judgment declaring that the Courts of the Navajo Nation do not have jurisdiction over him and enjoining the Navajo Nation action. Mr. South's Complaint alleges that the Tomahawk Bar is located in Prewitt, New Mexico on private fee land, (Compl. at ¶ 11); that Mr. South is non-Indian, (Compl. at ¶ 12); that Prewitt is outside the exterior boundaries of the Navajo Nation and not in "Indian Country," (Compl. at ¶ 10); and that the accident allegedly occurred in "Indian Country," outside the exterior boundaries of the Navajo Nation, (Compl. at ¶ 13.)

## II. DISCUSSION

Mr. South's complaint challenges the scope of the tribal court's jurisdiction, which raises a federal question under 28 U.S.C. § 1331. *See Calumet Gaming Group-Kansas, Inc., v. Kickapoo Tribe of Kansas*, 987 F. Supp. 1321, 1325 (D.Kan. 1997). Defendants argue that Mr. South's Complaint should be dismissed because he failed to exhaust his tribal court remedies. Mr. South contends that Defendant's motion is premature and argues that this Court must hold an evidentiary hearing to determine whether he exhausted his tribal court remedies and whether any exceptions to the

exhaustion rule apply.[2]  Having concluded that Defendants' motion is not premature and that it can be decided without holding a factfinding hearing, I now turn to a discussion of the application of the tribal exhaustion doctrine to this case.

### A.        The Tribal Exhaustion Doctrine

The tribal exhaustion doctrine originated in the Supreme Court's opinion in *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985) and was reaffirmed in *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9 (1987).  This doctrine "provides that 'as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies.'" *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1376 (10th Cir. 1993) (quoting *Tillett v. Lujan*,

---

[2] Mr. South also argues that Defendants failed to identify the type of motion they filed and impermissibly attached to their motion extraneous documents that cannot be considered in connection with a Rule 12(b) motion. Defendants' motion cannot be categorized as a Rule 12(b)(6) motion "because dismissal pursuant to that rule is with prejudice, and the Tenth Circuit has held that '[a] federal action may be abated or dismissed without prejudice to enable pursuit of tribal court remedies.'" *Petrogulf Corp. v. Arco Oil & Gas Co.*, 92 F. Supp. 2d 1111, 1114 (D.Col. 2000) (citation omitted).  "Nevertheless, because the basis of Defendants' motion is the tribal exhaustion rule, I construe the motion as one for dismissal without prejudice on the ground of abstention, and proceed to address its merits." *Id*.

The exhibits attached to Defendants' motion include a copy of the Order issued by the Supreme Court of the Navajo Nation, a copy of the Opinion and Order entered by the District Court of the Navajo Nation, and copies of several cases from the Supreme Court of the Navajo Nation.  Under Fed. R. Evid. 201(b), it is appropriate to take judicial notice of the two orders as matters of public record. *See, e.g.*, *5-Star Management, Inc. v. Rogers*, 940 F. Supp. 512, 518 (E.D.N.Y. 1996) (stating that a court is permitted to take judicial notice of matters of public record, including "the fact of such litigation and related filings," when considering a motion to dismiss) (citation omitted).  It was unnecessary to consider the cases from the Supreme Court of the Navajo Nation in deciding this motion.

931 F.2d 636, 640 (10th Cir. 1991)).[3]

The Supreme Court has set forth three exceptions to application of the tribal exhaustion doctrine. First, the doctrine does not apply where an assertion of tribal court jurisdiction is motivated by harassment or conducted in bad faith. *See National Farmers*, 471 U.S. at 856 n. 21. Second, the tribal court exhaustion doctrine is inapplicable when the tribal court action "is patently violative of express jurisdictional prohibitions." *Id*. Third, the doctrine does not come into play if tribal court exhaustion would be futile due to an inadequate opportunity to challenge the tribal court's jurisdiction. *Id*.

If none of these three exceptions prohibits application of the tribal exhaustion doctrine, then the court should engage in an analysis "based on comity concerns for Indian tribes in maintaining their remaining sovereignty." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997), *cert. denied*, 522 U.S. 1090 (1998). These comity concerns, which were first articulated by the Supreme

---

[3] Mr. South contends that "[t]he requirement of exhaustion of remedies in Tribal Court has been somewhat undermined in the case of *Strate v. A-1 Contractors*, 117 S.Ct. 1404, 520 U.S. 438, 137 L.Ed. 661 (1997)." (Resp. at 4.) *Strate*, however, "is not a tribal exhaustion case." *Kerr-McGee*, 115 F.3d 1498, 1506; *see also Petrogulf Corp. v. Arco Oil & Gas Co.*, 92 F. Supp. 2d 1111 (D.Col. 2000) ("*Strate* did not address the exhaustion requirement."). In *Strate*, a non-Indian and her adult Indian children sued a non-Indian in tribal court after being involved in an accident on a state highway running through an Indian reservation. *See Strate*, 520 U.S. at 442-43. After the tribal court ruled that it had jurisdiction over the suit, the respondents appealed to the tribal appellate court, which affirmed the ruling. *See id*. at 444. The respondents then filed suit in federal district court seeking a declaratory judgment that the tribal court lacked jurisdiction. *See id*. Thus, the issue presented in *Strate* was whether the tribal court had jurisdiction over civil disputes involving non-Indians in a car accident on a state highway running through a reservation--not whether the tribal exhaustion rule applied. *See id*. at 442. In a footnote, however, the Supreme Court stated that the tribal exhaustion doctrine applies unless "it is plain" that the tribal court lacks jurisdiction. *Id*. at 459 n.14. As discussed, *infra*, this is a tribal exhaustion case because tribal court remedies have not yet been exhausted. Therefore, *Strate* applies to this case only to the extent that the tribal exhaustion doctrine is inapplicable if "it is plain" that the tribal court lacks jurisdiction. *See Allstate Indemnity Co. v. Stump*, 191 F.3d 1071, 1073 (9th Cir. 1999) (stating that the Supreme Court's decision in *Strate* "affirmed that the exhaustion requirement applies unless 'it is plain' that the tribal court lacks jurisdiction over the dispute.") (citation omitted), *opinion amended by* 197 F.3d 1031 (1999).

6

Court in *National Farmers*, advance three discrete interests: "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary." *Id*. (citing *National Farmers*, 471 U.S. at 856-57).

When the dispute at issue is a reservation affair, these comity concerns "almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum." *Zah*, 5 F.3d at 1378; *see also Kerr-McGee*, 115 F.3d at 1507. A dispute involving non-Indian activity occurring outside the reservation, but within Indian Country, requires the court to assiduously examine the *National Farmers* factors to determine whether comity concerns invoke the tribal exhaustion doctrine. *See Zah*, 5 F.3d at 1378; *see also Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1537 (10th Cir. 1995) ("[T]he tribal abstention doctrine applies throughout Indian country, not just on formal reservations. However, the application of the doctrine may differ outside the formal boundaries of a reservation.") (footnote omitted).[4]

---

[4] At least one scholar has criticized the Tenth Circuit for making an artificial distinction between the application of the tribal exhaustion rule with respect to incidents arising on formal reservations and those arising within Indian Country. *See* Melissa L. Koehn, *Civil Jurisdiction: The Boundaries between Federal and Tribal Courts*, 29 Ariz. St. L.J. 705, 745 & n.224 (1997) (concluding that "the exhaustion doctrine reaches all of 'Indian Country,' not just formal reservations" and faulting the Tenth Circuit for "its proposition that tribal authority varies depending on whether a 'reservation' or 'Indian Country' is involved."); *see also Oklahoma Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 128 (1993) ("Absent explicit congressional direction to the contrary, we presume against a State's having the jurisdiction to tax within Indian country, whether the particular territory consists of formal or informal reservation, allotted lands, or dependent Indian communities."). The Tenth Circuit has even acknowledged that the Supreme Court "has rejected any distinction between formal reservations and Indian country." *Watchman*, 52 F.3d at 1537 n.7 (citing *Sac & Fox Nation*, 113 S.Ct. at 1991). Nevertheless, the Tenth Circuit has concluded that *Sac & Fox Nation* does not conflict with the "conclusion that the application of the doctrine differs depending on the degree Indian affairs are implicated in a particular case." *Id*. Although there may be merit to the criticism of the Tenth Circuit's distinction between the application of the tribal exhaustion doctrine within Indian Country and within a formal reservation, this Court is constrained to follow Tenth Circuit law on this issue.

### B. Mr. South's attempted exhaustion of tribal court remedies

The parties have not explicitly addressed the issue of whether Mr. South exhausted his tribal court remedies. Nevertheless, this issue should be briefly addressed. *See Calumet Gaming*, 987 F. Supp. at 1328 ("The court feels that it must also address the scope of the necessary exhaustion here, an issue that the parties have essentially ignored."). Mr. South appealed the jurisdictional ruling of the Navajo Nation District Court to the Navajo Supreme Court, which dismissed the appeal on the ground that an order denying a motion to dismiss for lack of jurisdiction is not a final appealable order. Hence, Mr. South has failed to exhaust his tribal court remedies because the tribal appellate court has not been afforded the opportunity to decide his jurisdictional challenge. Moreover, the tribal exhaustion doctrine requires exhaustion not only of the issue of the tribal court's jurisdiction, but also of the merits of the action. *See Kerr-McGee*, 115 F.3d at 1508 ("Because of *Iowa Mutual*'s expansive abstention, we are required to allow full exhaustion of tribal court litigation, potentially including litigation of the merits."); *Calumet Gaming*, 987 F. Supp. at 1328 (rejecting the notion that a party must exhaust in tribal court only the jurisdictional question and stating that "[i]t is apparent from the caselaw that in the Tenth Circuit tribal court remedies must be exhausted with respect to issues other than the scope of the tribal court's jurisdiction.").

### C. Application of the tribal exhaustion doctrine

#### 1. Exceptions

##### a. harassment or bad faith

This "exception requires bad faith or a desire to harass in the assertion of tribal court jurisdiction." *Calumet Gaming*, 987 F. Supp. at 1327 (citing *National Farmers*, 471 U.S. at 857 n.21). In his response, Mr. South makes the perfunctory statement that "[w]hether or not tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith must be fully developed in a

fact finding hearing." (Resp. at 6.)  This statement is insufficient to invoke the first exception to the tribal exhaustion doctrine.  Moreover, the District Court of the Navajo Nation issued a six-page Opinion and Order explaining why it believed that it had jurisdiction, which weighs against a finding that the tribal court asserted its jurisdiction in bad faith or out of a desire to harass.

> b. *express jurisdictional prohibitions*

"A substantial showing must be made by the party seeking to invoke this exception to the tribal exhaustion rule."  *Kerr-McGee*, 115 F.3d at 1502 (citations omitted).  Mr. South appears to argue that the tribal court's exercise of jurisdiction is patently violative of an express jurisdictional prohibition because *Strate v. A-1 Contractors* and *Montana v. United States*, 450 U.S. 544 (1981) establish that "a Tribal Court has no inherent jurisdiction over non-Indians." (Resp. at 7.)  This argument has already been rejected by the Tenth Circuit.  *See Zah*, 5 F.3d 1374.  In *Zah* the court rejected the appellants' argument that under *Montana* and other cases the tribal court's authority over non-Indians terminated at the boundary of the Navajo reservation:

> Such cases [ ] merely hold that Indian tribes have authority over non-Indians when the activity occurs within reservation boundaries. They do not expressly stand for the proposition that a tribal court has no jurisdiction over non-Indian activity occurring outside the reservation, but within Indian Country.  As a result, we cannot say that the tribal court's assertion of jurisdiction here is *patently* violative of an *express* jurisdictional prohibition.

*Id*. at 1377 (emphasis in original).

Hence, *Montana* does not establish that the Navajo tribal court's exercise of jurisdiction patently violates an express jurisdictional prohibition.  Furthermore, the laws of the Navajo Nation suggest that its tribal courts have jurisdiction over this matter.  *See* Nation Code tit. 7 §§ 253 and 207 (1995).  This fact strengthens the conclusion that the tribal court's exercise of jurisdiction over Mr. South does not patently violate an express jurisdictional prohibition.  *See Zah*, 5 F.3d at 1377.

*c.    futility*

"The third exception involves a situation 'where exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction." *Calumet Gaming*, 987 F. Supp. at 1328 (citing *National Farmers*, 471 U.S. at 856 n.21). Mr. South argues that "a factual hearing must be held to determine whether or not exhaustion of tribal remedies would be futile because the Navajo Tribe is denying Plaintiff the opportunity to challenge Tribal Court jurisdiction." (Resp. at 6.) Mr. South claims that if a hearing were held, he would direct this Court to several cases challenging tribal court jurisdiction that have been languishing in the Navajo Supreme Court for several years. *Id*. Mr. South's argument is unpersuasive because it misapprehends the nature of the futility exception, which is concerned with a party's opportunity to challenge tribal court jurisdiction--not with the timeliness of tribal appellate review.

Here, the Navajo District Court ruled that it had personal jurisdiction over Mr. South.[5] When Plaintiff appealed this ruling to the Supreme Court of the Navajo Nation, the court merely stated that "[i]n this jurisdiction, an order denying a motion to dismiss based on lack of jurisdiction is not a final appealable order," citing *Billie v. Abbott*, 5 Nav. Rptr. 201 (Navajo S.Ct. 1987). The Navajo Supreme Court's ruling establishes that Mr. South will have an opportunity to appeal the jurisdictional ruling of

---

[5] The futility exception is not even invoked when a tribal district court has made a jurisdictional ruling adverse to the party challenging the court's jurisdiction. In *Zah* the Tenth Circuit rejected the appellants contention that "they lack an adequate opportunity to challenge the tribal court's jurisdiction because the Navajo tribal courts already have determined that they have jurisdiction over non-Indian activities occurring outside the reservation but within Navajo Indian Country." *Zah*, 5 F.3d at 1377. The court noted that "[w]hile the Navajo Tribal Code expressly grants the Navajo tribal courts jurisdiction over challenges to the validity of the Navajo tax code," the tribal courts retained the "authority to dismiss a case for lack of jurisdiction." *Id*. (citing *Sandoval v. Tinian, Inc.*, 5 Navajo Rptr. 215, 217 (Navajo D.Ct. 1986)); *see also Navajo Nation v. Intermountain Steel Buildings, Inc.*, 42 F. Supp. 2d 1222, 1228 (D.N.M. 1999) (holding that the futility exception did not apply because Navajo tribal courts have the authority to dismiss a case for lack of subject matter jurisdiction and because rulings of the Navajo District Court are appealable to the Navajo Supreme Court).

the district court after entry of a final order adjudicating all of the rights of the parties. Because Mr. South still have an opportunity to challenge tribal court jurisdiction, albeit not as soon as he would like, the futility exception does not operate as a bar to the tribal exhaustion rule. *See Calumet*, 987 F. Supp. at 1328 (noting that "the rulings of the Tribal District Court are subject to review by an appellate tribal court, where any judicial errors my be corrected" and concluding that the plaintiff had an adequate opportunity within the tribal court system to challenge the court's jurisdiction).

### 2. Comity Concerns

The parties agree that the Tomahawk Bar is not on the Navajo Reservation. The parties also seem to agree that the accident occurred outside the exterior boundary of the Navajo Nation reservation but within Indian Country. Because the parties agree that neither the sale of alcohol nor the accident occurred on the Navajo reservation, this dispute cannot be said to involve a reservation affair. This action may, however, be characterized as having arisen within Indian Country since the parties agree that the accident occurred there. Unfortunately the parties have failed to specify whether the accident occurred within Indian Country as that term is used under 18 U.S.C. § 1151[6] or as that term is defined

---

[6] Section 1151 defines "Indian country" as "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . . (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." Although this definition is found in the Major Crimes Act, it "applies to questions of both criminal and civil jurisdiction." *Zah*, 5 F.3d at 1376 n.3.

under the Navajo Tribal Code, Nation Code tit. 7 § 254 (1995).[7]  The Tenth Circuit has recognized that the definition of "Indian Country" under 18 U.S.C. § 1151 "is not as broad as the Navajo Tribal Code's definition of Navajo Indian Country." *Zah*, 5 F.3d at 1376 n.3.  It is unclear whether the distinction has any significance with respect to an analysis of the *National Farmer*'s comity concerns,[8] although case law suggests that whether an accident occurred within Navajo Indian Country or Indian Country under § 1151 is just one more factor to consider in a court's comity analysis.  *See Watchman*, 52 F.3d at 1537 & n.7 (stating that "[t]he facts and circumstances of each individual situation will determine whether comity requires abstention in that particular instance" and that "the application of the doctrine differs depending on the degree Indian affairs are implicated in a particular case.").  Moreover, the Tenth Circuit has held that the tribal exhaustion doctrine "applies throughout Indian Country," *id*. at 1537, and has not limited the application of the doctrine to disputes arising only in Indian Country under § 1151.

---

[7] The opinion of the Navajo Nation District Court states that the "Complaint alleges that the situs of the incident is within Navajo Indian Country, as that terms is defined in 7 NNC Sec. 254 (1995)." (Opinion at 2.)  This statement appears to be incorrect, however, because the Amended Complaint to Recover Damages for Personal Injury filed in the Navajo Nation District Court does not allege that the accident occurred in *Navajo* Indian Country--only that it occurred in "Indian country."  *See*  Am. Compl. ¶ 13 (alleging that "the collision that gives rise to this litigation happened in Indian country, on or near the lands of the Navajo Nation.")  Defendants' memorandum in support of their motion to dismiss also states that the accident occurred "in Navajo Indian Country." (Memo. at 4.)  Mr. South's federal district court complaint, however, alleges only that "Brian Joe allegedly drove his vehicle onto 'Indian Country' outside of the exterior boundaries of the Navajo Nation and was involved in an automobile accident causing injury." (Compl. at ¶ 13.)

[8] Although the distinction between actions arising on Indian Country as defined under § 1151 and under the Navajo Tribal Code was raised in *Zah*, the Tenth Circuit did not have to address the significance of this distinction because the parties had agreed that "much of the territory at issue falls within both definitions." *Zah*, 5 F.3d at 1376 n.3.

Assuming *arguendo* that the accident occurred only within Navajo Indian Country,[9] but not within Indian Country under § 1151, an assiduous evaluation of the *National Farmers* factors dictate that this court abstain from exercising its jurisdiction over this matter.[10]  *See Zah*, 5 F.3d at 1378 (stating that "[w]hen the dispute involves non-Indian activity occurring outside the reservation [ ] the policies behind the tribal exhaustion rule are not so obviously served[,]" and that the district court must "examine assiduously the *National Farmers* factors in determining whether comity requires the parties to exhaust their tribal remedies before presenting their dispute to the federal courts.").

*1.  furthering congressional policy of supporting tribal self-government*

The first factor to consider in a *National Farmers* comity analysis is "whether requiring exhaustion of tribal court remedies will further the congressional policy of supporting tribal self-government and self-determination." *Intermountain Steel*, 42 F. Supp. 2d at 1229.  "If exhaustion is not required, the legitimacy and independence of the tribal court system come into serious question.  Allowing litigants to bypass tribal institutions simply by filing an action in federal court would undercut the tribal court system." *Watchman*, 52 F.3d at 1538.

Here, it would undercut the Navajo tribal court system if this Court exercised jurisdiction over this dispute, which involves an accident that allegedly occurred in Indian Country in a car owned and driven by tribal members.  Moreover, the only passengers in the car were tribal members.  Finally, the Navajo tribal courts have already made a jurisdictional ruling in this case.  *See Kerr-McGee*, 115 F.3d

---

[9] I note that Mr. South has not asserted that the accident occurred only within Navajo Indian Country.  Nor has he requested a declaration that the accident occurred within Indian Country as defined by the Navajo Tribal Code but not under § 1151.  Finally, he failed to request an evidentiary hearing on this issue.

[10] Astonishingly, the parties failed to address the *National Farmers* comity factors.  Instead, the briefs focus only on the application of the exceptions to the tribal exhaustion rule and the issue of whether the tribal court has jurisdiction over this dispute--an issue which is not before this Court.

at 1509 ("It does not serve Congress's interest in promoting development of tribal courts, *see Iowa Mutual*, 480 U.S. at 19, 107 S.Ct. at 978, to second-guess the jurisdictional determinations of the Navajo district court before the tribal appellate process has run its course."). Therefore, consideration of the first comity factor supports abstention.

### 2. *promoting the orderly administration of justice*

An evaluation of the second *National Farmers* factor, the orderly administration of justice, also favors abstaining in deference to the tribal court. "[T]he orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." *National Farmers*, 471 U.S. at 856 (footnote omitted). Because this case involves the application of the Navajo Nation's Dram Shop Act and the tribe's civil jurisdiction statute, it appears that tribal law will influence this case. Therefore, "abstaining at this stage of the case will decrease the likelihood that I will have to certify any questions to the tribal court." *Petrogulf*, 92 F. Supp. 2d at 1118; *see also Watchman*, 52 F.3d at 1538 (concluding that the tribe was in the best position to develop a factual record for disposition on the merits and stating, "[t]his is particularly true because [plaintiff's] lawsuit presents a direct challenge to the Navajo Nation's jurisdiction and involves interpretation of Navajo law.") (citation omitted). The orderly administration of justice will best be served in this case if this Court "stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made." *National Farmers*, 471 U.S. at 857.

### 3. *obtaining the benefit of tribal expertise on further review*

Consideration of the third comity factor also militates in favor of requiring Plaintiff to exhaust his administrative remedies in tribal court. "By permitting the tribal court to first determine its own jurisdiction, a federal court that may eventually be called upon to review this determination will have at

its disposal a fully developed tribal court record from which to evaluate any challenges to that jurisdiction." *Petrogulf*, 92 F. Supp. 2d at 1118. If eventually called upon to review the tribal court's assertion of jurisdiction, this Court would benefit from having at its disposal a fully developed tribal court record, which would include a ruling by the Navajo Supreme Court on the Navajo District Court's interpretation of its own civil jurisdiction statute and the Navajo Nation Dram Shop Act.[11] "Moreover, if the tribal court reaches the merits of the action," this Court "will have the benefit of the tribal court's interpretation of tribal law . . . that may apply to this case." *Id*.

     Finally, the conclusion that comity concerns dictate in favor of abstention is further supported by the fact that an action has already been filed in the tribal court. *See Watchman*, 52 F.3d at 1537 (stating that "[t]he policies behind abstention are most strongly implicated when a federal court action is brought after a tribal court action has already been filed").

---

[11] The Opinion and Order of the Navajo District Court states that the land on which the Tomahawk Bar is located "is in fact in the Checkerboard Area of the New Mexico portion of the Navajo Nation. An official map of the Navajo Nation indicates that the land is within the 'exterior boundaries' of the Navajo Nation." (Op. & Order at 2, Ex. A to Defs.' Mo. to Dismiss.) Although the parties did not raise this issue in their briefs, it is reasonable to believe that the tribe's jurisdiction over this dispute may be affected by the location of the Tomahawk Bar. Therefore, this Court would benefit by a further analysis of this issue by the tribal courts.

**D.** **Stay of this action**

"In applying the tribal exhaustion rule, the district court has discretion either to stay or to dismiss the federal action." *Calumet Gaming*, 987 F. Supp. at 1330 (citing *Iowa Mutual*, 480 U.S. at 20 n.14; *National Farmers*, 471 U.S. at 857). In an abstention case, the Tenth Circuit prefers issuance of a stay rather than dismissal of the action. *See id*. Therefore, this action will be stayed pending Mr. South's exhaustion of his tribal court remedies. Once his remedies are exhausted, Mr. South may seek review in this Court of the tribal court's exercise of jurisdiction. *See id*.

IT IS THEREFORE ORDERED that :

1.  Defendants' Motion to Dismiss this action for failure to exhaust tribal court remedies, (Doc. No. 15), is DENIED; and

2.  This action is stayed until Plaintiff, Mr. South, has exhausted his remedies in the courts of the Navajo Nation.

_____
CHIEF UNITED STATES DISTRICT JUDGE